UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ARTISAN TECHNOLOGIES LLC,<br>Plaintiff and Counterclaim Defendant,<br><br>-against-<br><br>INTERLUDE U.S., INC. D/B/A EKO,<br>Defendant and Counterclaim Plaintiff. | : | 25 Civ. 7214 (LGS)<br><br>**OPINION & ORDER** |

LORNA G. SCHOFIELD, District Judge:

Plaintiff and Counterclaim Defendant Artisan Technologies LLC ("Artisan") brings this action against Interlude U.S., Inc., doing business as eko ("eko"), asserting claims for breach of contract (Claim I), breach of the duty of good faith and fair dealing (Claim II), misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and the common law (Claims III and IV, respectively) and fraudulent inducement (Claim V). Eko moves to dismiss the Second Amended Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, eko's motion to dismiss is granted in part and denied in part.

## I. FACTUAL BACKGROUND

The following facts are taken from the Complaint and documents integral to the Complaint, including the parties' contracts. *See Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025). These facts are assumed to be true for purposes of this motion and are construed in the light most favorable to Plaintiff as the non-moving party. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022).

Plaintiff is the creator of the Donatello Arm Operating System ("DAOS"). The DAOS is a proprietary, high-quality, high-volume and low-cost video capture system used to create promotional videos to sell products online. Defendant is a company that distributes multimedia content to e-commerce companies. The parties' relationship began in 2022, when Defendant was

searching for a system that would allow for quick, cheap and reliable capture of video footage suitable for Defendant's clients. Plaintiff shared the DAOS with Defendant confidentially during an initial meeting. As a result of that meeting, Defendant requested a proof-of-concept video shot using the system, which Plaintiff shot out of the presence of Defendant personnel. Defendant wished to move forward with the relationship after viewing the proof-of-concept video.

On July 12, 2022, Plaintiff and Defendant entered into a Non-Disclosure and Confidentiality Agreement (the "NDA"). The NDA obligates Defendant to use Plaintiff's confidential information only for its "intended purpose" and to maintain Plaintiff's trade secrets confidentially pursuant to the Georgia Trade Secrets Act. Plaintiff then conducted another video shoot and created a pitch video using that footage, which Defendant shared with non-party Walmart, Inc. ("Walmart"). Walmart committed to moving forward with Defendant following the meeting. Immediately following Walmart's commitment, on October 20, 2022, Plaintiff and Defendant entered into an agreement, executed by a signed Term Sheet, governing the building and production of a production studio within Walmart's corporate complex. Defendant rejected Plaintiff's offer to enter into a joint venture but stated that Defendant was committed to working with Plaintiff for the long term.

On December 6, 2022, representatives of Walmart, Plaintiff and Defendant toured the completed studio. During the tour, Artisan personnel conducted a live demonstration of the DAOS. After this demonstration, Walmart approved moving ahead with the use of the studio and DAOS. Plaintiff then instituted and strictly enforced measures to ensure the security of Plaintiff's confidential information, including key card access and explicit signage at studio entrances and exits.

On February 2, 2023, Plaintiff and Defendant entered into a Production Agreement. The Production Agreement obligates Plaintiff to perform work in support of the studio and its functions, and Defendant to pay Plaintiff a monthly service fee plus additional fees based on the volume of video content created. Pursuant to the agreement, Plaintiff created video footage of products selected by Defendant. Plaintiff expressed to Defendant that Plaintiff felt it would be under-compensated by this arrangement. Plaintiff also feared that Defendant might internalize video production in the future. Defendant assured Plaintiff that the volume-based payment would make up for any perceived shortfall in the monthly service fee and that Defendant had no intention of engaging in the production of video content.

On December 18, 2023, Avi Karpick, the creator of the DAOS, visited Defendant's offices. While there, he saw a robot in operation that appeared to be a copy of the DAOS design. On April 23 and 24, 2024, Plaintiff's Chief Executive Officer, Daniel Miller, met with Defendant's President and Chief Commercial Officer, Ben Kaufman. At this meeting, Mr. Kaufman showed Mr. Miller a CGI version of an eko video-capture system. Mr. Miller told Mr. Kaufman that the design was a near exact copy of the DAOS, but Defendant led Plaintiff to believe that Defendant's facility was incapable of meeting Walmart's demands, which necessitated Defendant's continued relationship with Plaintiff.

Shortly thereafter, the parties' relationship ended. On May 7, 2025, Defendant notified Plaintiff of Defendant's plan to internalize production at the studio. On May 8, 2025, Defendant asked one of Plaintiff's employees to provide it with a video of the DAOS in action. Then, on May 9, 2025, Defendant's chief creative officer wrote to Mr. Miller that he was "aligned and want to continue having things be collaborative as they've always been. Excited to figure out our path forward, and will be sure to keep communications going strictly through you." On June 10,

2025, Defendant sent an email to Plaintiff that purported to terminate the Production Agreement without cause. The instant suit ensued.

## II. LEGAL STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider conclusory allegations or legal conclusions couched as factual allegations. *See Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir 2023). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[1] *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d. Cir 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] . . . claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).

## III. DISCUSSION

The Complaint asserts claims for misappropriation of trade secrets, breach of express and implied contract terms and fraudulent inducement. For the reasons below, Defendant's motion is denied as to the trade secret claims (Claims III and IV) and the contract claims to the extent that they relate to the Use provision of the NDA and Non-Disclosure Provisions of the NDA and Production Agreement (Claim I). Defendant's motion is granted as to the other express contract claims (Claim I), the implied covenant claim (Claim II) and the claim for fraudulent inducement (Claim V).

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

### A. Misappropriation of Trade Secrets (Claims III and IV)

Defendant's motion to dismiss the trade secret claims is denied. The Complaint plausibly alleges that Plaintiff possessed one or more trade secrets and that Defendant misappropriated Plaintiff's trade secrets.

#### 1. DTSA (Claim III)

To state a claim under the DTSA, plaintiff must prove that it was the "owner" of a trade secret and that it was "misappropriated." *See* 18 U.S.C. § 1836(b)(1); *id.* § 1839(2)-(5). The DTSA defines trade secrets broadly as "all forms and types of financial, business, scientific, technical, economic, or engineering information," including, as relevant here, information such as "designs, prototypes, methods, techniques [and] processes." *Id.* § 1839(3). The owner must have "taken reasonable measures to keep such information secret" and the information must "derive[] independent economic value . . . from not being generally known to [another person]." *Id.* at § 1839(3)(A)-(B).

##### a. Pleading of Trade Secrets with Specificity

Defendant argues that the Complaint does not define the allegedly misappropriated trade secrets with sufficient specificity. This argument is unavailing because the Complaint alleges the existence of a trade secret with sufficient specificity to put Defendant on notice of the nature of Plaintiff's claims.

"The existence of a trade secret, including whether it was adequately identified, is a fact-specific question to be decided on a case-by-case basis." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 68 F.4th 792, 801 (2d Cir. 2023). The Second Circuit has explicitly declined to articulate a rule regarding the degree of specificity required to prove the existence of a trade secret. *See id.* However, "district courts in this circuit routinely require that plaintiffs plead

their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y. 2020). "The existence, vel non, of a trade secret usually is treated as a question of fact." *Precision Medicine Grp., LLC v. Blue Matter, LLC*, No. 20 Civ. 2974, 2025 WL 2695689, at *28 (S.D.N.Y. Sep. 22, 2025) (quoting *Chevron U.S.A., Inc. v. Roxen Serv., Inc.*, 813 F.2d 26, 29 (2d Cir. 1987)).

The Complaint alleges the nature of Plaintiff's trade secrets with the requisite specificity. Specifically, the Complaint states that "[t]he [DAOS] constitutes Artisan's trade secrets" and that "Artisan's [DAOS] . . . is protected by trade secret law." Exhibit A to the Complaint describes elements of the DAOS, including the "[d]evelopment and use of programming to carry out 'signature move'" and "[p]hysical modifications to orbital camera rig." These elements, for example, plausibly include "programs" and "prototypes," which the DTSA protects. 18 U.S.C. § 1839(3).

Contrary to Defendant's argument, the Complaint alleges specific elements, not "general categories of information." *Sapir v. Rosen*, No. 20 Civ. 6191, 2021 WL 4482277, at *5 (S.D.N.Y. Sep. 30, 2021). The Complaint permissibly identifies the elements of the DAOS "in a categorical fashion" with sufficient specificity to survive a motion to dismiss. *NRD GP LLC v. Centiva Cap., LP*, No. 24 Civ. 7245, 2025 WL 2782804, at *3 (S.D.N.Y. Sept. 30, 2025); *see Cartiga v. Aquino*, No. 24 Civ. 1014, 2025 WL 388804, at *8-9 (S.D.N.Y. Feb. 4, 2025) (categorical description sufficient at pleading stage).

Defendant contends that in opposing the Motion to Dismiss, Plaintiff argues for the first time that "its trade secrets 'arise through the coordinated implementation of the elements with their confidential parameters.'" Contrary to Defendant's argument, this idea is apparent on the

face of the Complaint. The Complaint, including the listed elements in Exhibit A, identifies Plaintiff's trade secrets with sufficient specificity.

**b. Value of Trade Secrets**

Defendant also argues that the Complaint does not adequately allege that the claimed trade secrets "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). This argument lacks merit.

The Complaint alleges that Defendant contracted with Plaintiff to take advantage of the DAOS, which Plaintiff created. The Complaint also alleges that the DAOS is a "first-of-its-kind, proprietary" system that Plaintiff discloses only "under the strictest of confidences." These allegations support the plausible inference that Plaintiff derives economic value from the construction and operation of the DAOS, which value would decrease if that information were publicly known. Based on these allegations, the Complaint adequately alleges that the DAOS derives value from its status as a secret.

**c. Ownership of Trade Secrets**

Defendant argues that Plaintiff does not own the asserted trade secrets because the parties' contracts assigned ownership rights to Defendant. This argument fails because, construing the allegations in the light most favorably to Plaintiff, Plaintiff's trade secrets pre-existed the contractual relationship.

Under the parties' contracts, Plaintiff retains the rights to its intellectual property that predates the parties' relationship, but Defendant owns intellectual property created during the parties' relationship. Specifically, the Term Sheet, which governed the construction of the studio

and the DAOS, states that Defendant owned "[a]ll the intellectual property rights to all property (including any content) created or developed in connection with this Agreement and the Proposed Transaction and/or in the Studio." Plaintiff retained ownership of "any documentation provided by Artisan, which includes any business secrets . . . solely in connection with the development construction and/or operation of the Studio."

The Production Agreement, which governed operation of the studio, establishes a similar framework. Under the Production Agreement, Defendant owned the studio's equipment, defined as "all the photography and film equipment owned by eko and provided to Artisan for the purposes of this Agreement, including but not limited to, the . . . 'Donatello Arm', and the 'XL Donatello Arm' . . . and any and all software or other applications owned by eko and necessary to properly operate any Orbital Arm or other Equipment provided by eko." Defendant also owned the services Artisan provided pursuant to that agreement, "including all results and proceeds of the property (including content) created or developed by or through the Services."

The Complaint supports a plausible inference that the trade secrets pre-existed the parties' contractual relationships. In 2022, Plaintiff shared the DAOS with Defendant. On March 31, 2022, Artisan performed a proof-of-concept video shoot utilizing the DAOS. None of Defendant's employees were present when this shoot was completed. Plaintiff then completed another video shoot using the DAOS between July 18 and 22, 2022. These uses of the DAOS took place before Plaintiff entered into the Term Sheet or Production Agreement with Defendant.

Defendant further argues that the claimed DAOS elements in Exhibit A to the Complaint mirror the services that Artisan performed under the contracts, and to which Defendant is contractually entitled. This argument fails because the Complaint alleges that Plaintiff's trade

secrets -- namely, the process for building and operating the DAOS -- existed prior to the parties' contracts.

Defendant also argues that the "Term Sheet recognizes Artisan's ownership only over its pre-existing processes reflected *in documentation* and that ownership over any processes 'created or developed . . . in the Studio' is assigned to eko" (emphasis added), but the Complaint does not allege that Plaintiff's trade secrets were reflected in documentation. Defendant's argument -- that the contract's silence on preexisting trade secrets *not* provided in documentation means that Plaintiff assigned those trade secrets to Defendant -- does not provide a basis for dismissal. *See Great Mill Rock LLC v. Stellex Cap. Mgmt.*, No. 20 Civ. 3056, 2020 WL 5370626, at *8 (S.D.N.Y. Sep. 4, 2020) (denying motion to dismiss where contract was silent on ownership of trademarks). Drawing all reasonable inferences in favor of Plaintiff, the Complaint adequately alleges that Plaintiff "possessed" the trade secrets at issue and did not assign those trade secrets to Defendant.

**d. Reasonable Measures of Secrecy**

Defendant argues that the Complaint does not allege that Plaintiff took "reasonable measures to keep" the asserted trade secrets secret, which is a requirement under the DTSA. 18 U.S.C. § 1839(3)(A). This argument is unavailing because the Complaint adequately alleges that Plaintiff took reasonable measures to protect its trade secrets.

The DTSA requires the owner of a trade secret to "take[] reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A). Examples of reasonable measures include "the use of confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain

confidentiality." *Catalyst Advisors*, *L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 675 (S.D.N.Y. 2022). "[W]hat measures are reasonable must depend in significant part on the nature of the trade secret at issue." *Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 WL 701161, at *2 (2d Cir. Mar. 9, 2022) (summary order).

The Complaint alleges that Plaintiff took several measures to protect its trade secrets. For example, the Complaint alleges that Plaintiff discloses the DAOS only under the strictest of confidences. Plaintiff originally shared the DAOS with Defendant on a confidential basis. The parties' NDA and Production Agreement limit the use and disclosure of Plaintiff's trade secrets. Plaintiff implemented procedures to protect the DAOS in the studio, including key card access, explicit signage and strict enforcement of security procedures. These measures are sufficient. *See, e.g.*, *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 385-86 (S.D.N.Y. 2023) (NDAs and restricted access were "reasonable measures of secrecy"); *Altman Stage Lighting, Inc. v. Smith*, No. 20 Civ. 2575, 2022 WL 374590, at *5 (S.D.N.Y. Feb. 8, 2022) ("There is not a single definition for what constitutes reasonable measures, though courts have looked to physical security measures at facilities and confidentiality agreements relating to sensitive information.").

Defendant argues that Plaintiff failed to maintain the secrecy of the asserted trade secrets because Plaintiff demonstrated the DAOS first during the parties' initial meeting and then during a tour of the studio at which Walmart and Defendant's representatives were present -- all before the parties signed the NDA. However, it is plausible that Plaintiff's demonstration of the operation of the DAOS did not disclose the asserted trade secrets, which include technical information like the "[d]evelopment and use of camera movement programming templates" and "[d]evelopment and use of programming to carry out 'signature move.'" Drawing all inferences

in favor of Plaintiff, the Complaint adequately alleges that Plaintiff takes reasonable measures to prevent the disclosure of the trade secrets. Defendant's motion to dismiss the DTSA claim is denied.

**2. Common Law (Claim IV)**

The Complaint asserts a common law claim for trade secret misappropriation. The parties' briefing assumes that that New York law applies, which is sufficient to establish choice of law. *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 100 n.2 (2d Cir. 2019). To state a claim under New York law, a plaintiff must show "(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *E.J. Brooks Co. v. Cambridge Security Seals*, 105 N.E. 3d 301, 310 (N.Y. 2018); *accord Pauwels v. Deloitte LLP*, 83 F.4th 171, 181 (2d Cir. 2023) (New York law). "Because the elements for a misappropriation claim under New York law are fundamentally the same as a DTSA claim, courts have found that a complaint sufficiently pleading a DTSA claim also states a claim for misappropriation of trade secrets under New York law." *Stone Point Advisory, LLC v. S&P Glob. Mkt. Intel., Inc.*, No. 25 Civ. 773, 2026 WL 866848, at *4 (S.D.N.Y. Mar. 30, 2026). Because the Complaint sufficiently pleads a DTSA claim, the Complaint also states a trade secret claim under New York law. Defendant's motion to dismiss the claim for common law misappropriation of trade secrets is denied.

**B. Breach of Contract (Claims I and II)**

The Complaint asserts claims for breach of express and implied contract terms. The claims for breach of the NDA's restriction on use of Plaintiff's confidential information and the NDA's and Production Agreement's provisions governing non-disclosure survive. The claims for breach of the Production Agreement's provisions governing non-solicitation, non-interference

and termination are dismissed. The claim for breach of the implied covenant of good faith and fair dealing is dismissed.

**1. Choice of Law**

New York law governs the Complaint's contract claims for the purposes of Defendant's motion. The NDA includes a Georgia choice of law provision. The Term Sheet and Production Agreement include New York choice of law provisions.

Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Matter of Allstate Ins. Co. (Stolarz)*, 613 N.E. 2d 936, 937 (N.Y. 1993); *accord Baker v. Weber*, No. 19 Civ. 1093, 2022 WL 3589095, at *5 (S.D.N.Y. Aug. 23, 2022). The parties have not briefed any distinctions between New York and Georgia law, and both parties cite New York law regarding the contract claims. Accordingly, the issues are analyzed under New York law. *See In re Snyder*, 939 F.3d at 100 n.2 ("[I]mplied consent is . . . sufficient to establish the applicable choice of law.").

Under New York law, a complaint asserting breach of contract must plead that: "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022); *accord Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (New York law). In resolving a motion to dismiss, courts "are not obliged to accept the allegations of the complaint as to how to construe" documents integral to the complaint, such as the parties' contracts, but any contractual ambiguities should be resolved in favor of the plaintiff. *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d

Cir. 2005); *accord Donoghue v. Smith*, No. 21 Civ. 4811, 2022 WL 1225338, at *3 (S.D.N.Y. April 26, 2022).

**2. Breach of Non-Disclosure Provisions (Claim I)**

The Complaint asserts claims for breach of the non-disclosure provisions of the NDA and Production Agreement. Defendant's motion is denied on these claims because the Complaint permissibly alleges on information and belief that Defendant disclosed Plaintiff's confidential information to Walmart.

The Production Agreement states that "[d]uring the Restricted Term, [Plaintiff] and [Defendant] each covenant and agree not to disclose or disseminate to any third parties whatsoever any Company Information of the other Party relating to the Business." The NDA states that "[Defendant] shall not directly or indirectly disclose, allow access to, transmit or transfer the Confidential Information disclosed by Company to any person not entitled to review the Confidential Information."

The Complaint alleges, on information and belief, that Defendant violated these terms by disclosing Plaintiff's trade secrets and other confidential information to third parties including Walmart. A claim based on "information and belief" pleading survives a motion to dismiss when "the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *accord L&H, Inc. v. Chijet Motor Co.*, No. 24 Civ. 6425, 2026 WL 890560, at *3 (S.D.N.Y. Mar. 31, 2026).

Here, the communications between Defendant and Walmart "are peculiarly within the possession and control of the defendant." *Arista*, 604 F.3d at 120. Additionally, Defendant's business relationship with Walmart and the allegation that Defendant used Plaintiff's trade

secrets without authorization at the studio constructed for Walmart provide "factual information that makes the inference of culpability plausible." *Id.* Defendant's motion is denied as to the non-disclosure provisions of the NDA and Production Agreement.

Defendant additionally argues that claims under the NDA are foreclosed by the parties' later agreements superseding the NDA. Drawing all inferences in favor of Plaintiff, the Term Sheet and Production Agreement do not govern the same subject matter as the NDA and do not supersede the NDA.

Under New York law, "[a] subsequent contract regarding the same subject matter will supersede a prior contract, but only with regard to that same subject matter." *Pope Contracting, Inc. v. N.Y.C. Housing Authority*, 186 N.Y.S. 3d 150, 153 (1st Dep't 2023). "The determination whether a subsequent agreement is superseding is fact-driven." *Hyuncheol Hwang v. Mirae Asset Sec. (USA) Inc.*, 85 N.Y.S.3d 38, 39 (1st Dep't 2018). The merger provision of the Production Agreement states:

> The Term Sheet and this Agreement constitutes [sic] the sole and entire agreement of the Parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

The Term Sheet similarly states that it "supersedes any prior written or oral agreements . . . respecting the subject matter of this document."

Drawing all inferences in favor of Plaintiff, neither the Term Sheet nor the Production Agreement supersedes the NDA because the contracts govern different subject matter and different time periods. The NDA's recitals state that it governs Defendant's confidentiality obligations with respect to Defendant's provision of services to Plaintiff. The NDA obligates Defendant to "use all reasonable efforts to protect the confidential nature of the Confidential

Information" and to "use the Confidential Information solely for its[] intended purpose . . . and [not to] use the Confidential Information in any manner that is to the competitive disadvantage of, or otherwise adverse or detrimental to, [Plaintiff]." The NDA is in effect for a minimum of two years after the date of termination and states that it "shall survive so long as such Confidential Information continues to constitute a Trade Secret" under the Georgia Trade Secrets Act.

In contrast to the NDA, the Term Sheet and Production Agreement state that those contracts govern Plaintiff's obligations in providing services to Defendant -- the construction of the subject studio and its operation and maintenance, respectively. The Term Sheet does not restrict use of confidential information. The Production Agreement restricts disclosure and dissemination to third parties, but not use: "During the Restricted Term, [Plaintiff] and [Defendant] each covenant and agree not to disclose or disseminate to any third parties whatsoever any Company Information of the other Party relating to the Business." "Company Information" includes trade secrets, and the "Restricted Term" is the period the agreement is in effect plus twelve months. The three agreements thus cover different subject matter, impose different obligations and cover different time periods. Construing the Complaint's allegations in the light most favorable to Plaintiff, the NDA is not superseded; the non-disclosure claims based on the NDA and Production Agreement survive.

**3. Breach of Use Restrictions (Claim I)**

Defendant seeks to dismiss the claim for breach of the Use Restriction of the NDA, primarily arguing that the Production Agreement superseded the NDA. This argument is unavailing. The Use Restriction of the NDA obligates Defendant to "use the Confidential Information solely for its[] intended purpose and for no other purpose, and shall not use the Confidential Information in any manner that is to the competitive disadvantage of, or otherwise

adverse or detrimental to," Plaintiff. The Production Agreement does not contain similar restrictions and, as explained above with respect to the non-disclosure provisions, the Production Agreement covers different subject matter, imposes different obligations and covers a different time period than the NDA. The Use Restriction of the NDA is not superseded.

Defendant also argues that, to the extent the NDA is not superseded, the Complaint fails to allege a breach because the Complaint does not assert that Defendant used Plaintiff's information in connection with Defendant's services to Plaintiff. This argument fails because the Complaint's allegations regarding use are sufficient. The Complaint alleges that Defendant showed a CGI copy of an eko video capture system to Plaintiff and that Plaintiff saw a videography system that appeared remarkably similar to the DAOS at Defendant's offices, all before Defendant internalized video production at the studio. These allegations support the plausible inference that Defendant used Plaintiff's trade secrets to internalize Plaintiff's services to Plaintiff's detriment.

**4. Breach of Non-Solicitation and Non-Interference Provisions (Claim I)**

The Complaint asserts a claim for breach of the non-solicitation and non-interference provisions of the Production Agreement. Defendant's motion is granted on these claims because the Complaint does not adequately allege that Defendant solicited Plaintiff's employees or interfered with Plaintiff's relationship with its employees.

In the Production Agreement, Defendant agreed not to "(i) induce or attempt to induce any employee or independent contractor of [Plaintiff] to leave the employ or engagement, as applicable, of [Plaintiff]; or (ii) in any way interfere with the relationship between [Plaintiff] and any employee or independent contractor of [Plaintiff]" within twelve months of the Agreement's termination.

The Complaint's only allegations in support of this claim are on information and belief. Unlike the non-disclosure claim, information-and-belief pleading does not suffice here because communications between Defendant and Plaintiff's employees are not "peculiarly within the possession and control of the defendant." *Arista*, 604 F.3d at 120.

**5. Breach of Termination Provisions (Claim I)**

The Complaint alleges that Defendant terminated the Production Agreement in violation of that contract's termination procedures and improperly prevented Plaintiff from working in the production studio. Defendant argues that these claims warrant dismissal because the Complaint does not plausibly allege breach of the termination provisions and the contract does not obligate Defendant to allow Plaintiff to work on the project. Plaintiff does not oppose these arguments. This portion of Plaintiff's claim is dismissed because it is unopposed. *See CTK Mktg., LLC v. Tristar Prods., Inc.*, No. 22 Civ. 7998, 2023 WL 6258540, at *7 (S.D.N.Y. Sept. 26, 2023) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim.").

**6. Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim II)**

The Complaint alleges that Defendant violated the implied covenant of good faith and fair dealing in that Defendant "withheld and/or transferred the benefits of the Production Agreement away from [Plaintiff]" by terminating that agreement. These allegations do not state a cognizable claim because the Production Agreement entitles Defendant to terminate the contract at any point without cause.

New York law implies a covenant of good faith and fair dealing in every contract. *See Cordero v. Transamerica Annuity Serv. Corp.*, 211 N.E. 3d 663, 670 (N.Y. 2023). This covenant "embraces a pledge that neither party shall do anything which will have the effect of destroying

or injuring the right of the other party to receive the fruits of the contract." *Id.* But "the covenant cannot be used to imply obligations inconsistent with other terms of the contractual relationship." *Singh v. City of New York*, 217 N.E. 3d 1, 5 (N.Y. 2023). "Where the express terms of a contract allow one party to terminate it in 'its sole discretion' or 'for any reason whatsoever,' the covenant of good faith and fair dealing cannot serve to negate that provision." *Vendome v. Oldenburg*, 152 N.Y.S. 3d 569, 569-70 (1st Dep't 2021). "[S]ole discretion to terminate a contract [is] a distinct right immune from the implied covenant." *111 W. 57th Inv. LLC v. 111 W57 Mezz Inv. LLC*, No. 41, 2026 WL 1502410, at *3 n.5 (N.Y. May 28, 2026) (collecting cases).

Plaintiff argues that the parties' agreements include an implied obligation that Defendant would not terminate the parties' relationship until Plaintiff received the benefits of the volume-based pricing arrangement. However, the Production Agreement states: "[E]ither Party may terminate this Agreement without Cause, as follows: (i) [Defendant] may terminate upon thirty (30) days prior written notice to [Plaintiff]." Plaintiff's implied obligation conflicts with this express without-cause termination provision. The Complaint thus fails to state a claim for breach of the implied covenant. *See id.*

*JLO Development Corp. v. Amalgamated Bank*, 222 N.Y.S. 3d 517 (2d Dep't 2024), which Plaintiff cites, is distinguishable. In *JLO*, the parties had entered into an agreement under which the plaintiff would "manage the process of obtaining all government approvals to clean-up and subdivide certain real property owned by the defendant," and the plaintiff's only compensation was a share of the gross profit on completion. *Id.* at 519. The defendant sold the property for less than its fair market value shortly before the subdivision was complete and after the plaintiff had expended "hundreds of hours managing the process over the course of two years." *Id.* at 520. The Second Department reversed the trial court's grant of dismissal, holding

that, although the defendant had the right to terminate the contract without cause, the Complaint adequately alleged that the defendant acted in bad faith. *Id.* Here, unlike in *JLO*, the parties' agreements provided Plaintiff monthly compensation throughout the term of the Production Agreement. The Complaint does not allege that Plaintiff received no compensation throughout the parties' relationship, as in *JLO*. Defendant's motion to dismiss is granted with respect to Claim II.

**C. Fraudulent Inducement (Claim V)**

The Complaint asserts that Defendant fraudulently induced Plaintiff to enter into the Production Agreement. This claim fails because the Complaint does not sufficiently plead that Defendant made false representations during negotiations.

"In an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996); *accord Green Star Energy Sols., LLC v. Edison Properties, LLC*, No. 21 Civ 2682, 2022 WL 16540835, at *5 (S.D.N.Y. Oct. 28, 2022). "General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support" a claim for fraud. *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995); *accord Essential Home Remodeling, Inc. v. Rossin*, 227 N.Y.S.3d 604, 605 (1st Dep't 2025). A fraudulent inducement claim must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires "a party [to] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Advanced Flower Capital Inc. v. Kanovitz*, No. 25 Civ. 2996, 2026 WL 892269, at *10 (S.D.N.Y. Mar. 31, 2026).

The Complaint alleges that, during the negotiations of the Production Agreement, Plaintiff expressed concerns that the monthly payment structure would inadequately compensate Plaintiff. To assuage these concerns, Defendant misrepresented that the volume-based payments to Plaintiff would redress short-term shortfalls, and that Defendant had "had no interest or plans to engage in the production of video content, and that it would be relying on Artisan to provide those services." The fraudulent inducement claim fails because these representations are forward-looking statements about Defendant's intention to perform, which do not support a claim for fraudulent inducement. *See Essential Home Remodeling, Inc.*, 227 N.Y.S.3d at 605; *Cronos Grp. Ltd. v. XComIP, LLC*, 64 N.Y.S.3d 180, 188 (1st Dep't 2017) (holding "insincere oral assurances" about contract performance do not support fraud claim). Defendant's motion to dismiss is granted with respect to Claim V.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part. The following claims are dismissed:

- Breach of the Non-Interference, Non-Solicitation and Termination Provisions of the Production Agreement (Claim I);
- Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim II);
- Fraudulent Inducement (Claim V).

The following claims survive:

- Breach of the Use Restriction of the NDA and Non-Disclosure Provisions of the NDA and Production Agreement (Claim I);
- Misappropriation of Trade Secrets under the DTSA and Common Law (Claims III & IV).

Dated: August 7, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE