UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ARTISAN TECHNOLOGIES LLC, Plaintiff and Counterclaim Defendant, -against- INTERLUDE U.S., INC., Defendant and Counterclaim Plaintiff. | : | 25 Civ. 7214 (LGS) **OPINION & ORDER** |

LORNA G. SCHOFIELD, District Judge:

This action is a trade secret and contract dispute between the parties Artisan Technologies LLC ("Artisan") and Interlude U.S., Inc., doing business as eko ("eko"). Eko moves for a finding that Artisan waived the attorney-client privilege for inadvertently disclosed documents. For the reasons below, eko's motion is granted.

## I. BACKGROUND

The following facts are taken from the parties' submissions and statements at the conference conducted on August 4, 2026.

Artisan is represented primarily by a solo practitioner ("Artisan's Counsel"). Artisan retained a contract review team to assist with document review and production in this matter (the "Review Team"). Artisan's Counsel had not used the Review Team's firm before but understood the firm's contract reviewers to be experienced in reviewing documents for privilege. Artisan's Counsel understood the Review Team to be attorneys licensed in foreign countries.

Artisan instructed the Review Team to "be on the lookout for anything that is attorney-client privilege" and "confirmed that they would be screening for privilege and work product." Artisan did not provide the Review Team with a list of Artisan's attorneys, which includes transactional counsel. The Review Team asked questions of Artisan's Counsel throughout the review process but did not ask any questions about attorney-client privilege. At the conclusion of

the review, the Review Team informed Artisan that they did not "find any" documents that were privileged. Artisan's Counsel performed a "spot-check" of Artisan's productions before they were sent to eko -- i.e., before each production was sent to eko, Artisan's Counsel downloaded the production and "look[ed] at various documents." Artisan's Counsel did not conduct a page-by-page review before productions were sent to eko. Artisan's total production in this case exceeded 30,000 pages.

On April 10, 2024, eko alerted Artisan of at least one potentially privileged document that Artisan had produced to eko. Artisan's Counsel, who was traveling at the time, requested that eko treat the document and any similar documents as inadvertently produced. (Eko says instead that Artisan asked eko to treat such documents as "presumptively privileged"). Artisan then instructed the Review Team to re-review Artisan's entire production. Artisan's Counsel discussed with the Review Team the inadvertently produced attorney-client communications of which Artisan was aware, and why these documents were privileged. Unlike the initial review, for this re-review Artisan's Counsel provided the Review Team a list of names of Artisan's transactional attorneys and conducted closer oversight of the Review Team's privilege calls. Artisan's Counsel had asked a colleague to perform work on this case on an hourly basis, and "ramped up" that colleague's work after the inadvertent production.

On or around May 6, 2026, following this re-review, Artisan clawed back 303 documents, comprising 2,595 pages of material. Artisan represents that substantially all clawed-back documents are or relate to Artisan's communications with its prior transactional counsel.

Artisan continued to claw back documents following this initial re-review. Around the beginning of July 2026, Artisan's Counsel personally reviewed Artisan's entire production and

clawed back at least 71 additional documents in July. Artisan also clawed back documents at depositions, even after Artisan witnesses had answered questions about the documents. Artisan determined that some of the clawed-back documents were not privileged and reproduced those documents. As of July 28, 2026, Artisan had clawed back and reproduced 115 documents. As of the August 4, 2026, conference held in this action, the parties were unaware of the precise number of documents or pages of documents subject to a claim of privilege, in part because of Artisan's ongoing review and reproduction. Eko asserts that Artisan inadvertently produced all but three responsive documents over which Artisan now claims privilege. Artisan similarly believes that the number of privileged documents that were not inadvertently produced is "on the order of six."

## II. LEGAL STANDARD

Disclosure of information covered by the attorney-client privilege or attorney work product doctrine does not result in waiver if (1) "the disclosure is inadvertent"; (2) "the holder of the privilege or protection took reasonable steps to prevent disclosure" and (3) "the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b). The Protective Order entered on February 2, 2026, states that if a party discloses privileged information "despite having taken reasonable steps to prevent" disclosure, "such disclosure, in itself, shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection." Consistent with Federal Rule of Civil Procedure 26(b)(5)(B), the Protective Order allows a disclosing party to claw back inadvertently disclosed information.

When, as here, "the parties have executed a protective order governing clawbacks, courts have held that waiver is appropriate only if production of the privileged material was completely

reckless." *In re OpenAI, Inc., Copyright Infringement Litig.*, No. 25 MD 3143, 2026 WL 1361677, at *2 (S.D.N.Y. May 14, 2026).[1] "For a production to be considered completely reckless, the producing party must have shown no regard for preserving the confidentiality of the privileged documents." *Kaneka Corp. v. Cocrystal Tech. (Jiaxing) Co.*, 801 F. Supp. 3d 164, 171 (E.D.N.Y. 2025). To assess whether a finding of waiver is warranted, courts in this Circuit typically look to the factors set out in *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985), which are: "[1] the reasonableness of the precautions taken by the producing party; [2] the volume of discovery versus the extent of the specific disclosure; [3] the length of time taken by the producing party to rectify the disclosure; and [4] overarching fairness concerns." *Kaneka Corp.*, 801 F. Supp. 3d at 171. These factors inform the Rule 502(b) inquiry, although the Rule controls.[2] *See United States v. McDermott*, No. 25 Crim. 427, 2026 WL 2294812, at *2-3 (S.D.N.Y. Aug. 10, 2026).

## III. DISCUSSION

Based on the facts recited above and in light of Rule 502(b) and the *Lois Sportswear* factors, Artisan has waived the attorney-client privilege over inadvertently disclosed documents.

### A. Reasonableness of Steps to Prevent Disclosure

*Lois Sportswear* factor one -- the reasonableness of any precautions taken by Artisan -- weighs in favor of finding a waiver. Artisan failed to take reasonable steps to prevent disclosure in at least two significant ways. First, although Artisan retained the Review Team to conduct

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.
[2] Unless otherwise indicated, all references to "Rules" are to the Federal Rules of Evidence.

document review, Artisan did not provide the Review team with a list of names of Artisan's attorneys or law firms. Such an approach would have assisted the Review Team in identifying privileged documents, and courts have deemed this step, when taken, to weigh against a finding of waiver. *See, e.g.*, *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09 Civ. 9783, 2013 WL 2322678, at *5-7 (S.D.N.Y. May 21, 2013) (finding reasonable precautions taken where contract lawyers were trained to identify privilege issues and given a list of attorney names and law firms); *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 160, 2012 WL 651536, at *4 (S.D.N.Y. Feb. 28, 2012) (same). Artisan did instruct the review team to "be on the lookout for anything that is attorney-client privilege," but these generic instructions were evidently insufficient for the Review Team to identify a single privileged communication.

Second, Artisan's quality control was gravely deficient. Artisan's Counsel performed a "spot-check" of Artisan's productions before they were sent to eko. Artisan does not explain what this process entailed, other than counsel's downloading the productions and "look[ing] at various documents." The Review Team's failure to identify and withhold a single document on initial review should have prompted Artisan's counsel to scrutinize the Review Team's privilege calls. However, the record does not reflect that Artisan took any steps to conduct quality control -- for example, running search terms that were likely to appear in privileged documents and segregating such documents for re-review. This "lack of reasonable quality control" compounded Artisan's failure to give adequate instructions to the Review Team on claims of privilege. *McDermott*, 2026 WL 2294812, at *3. This case is in sharp contrast to those in which courts have found that a party took reasonable steps to prevent disclosure. *See, e.g.*, *In re OpenAI*, 2026 WL 1361677, at *2-3 (finding no waiver when privilege review process included three layers of

review, including two layers aimed specifically at privilege determinations); *Fuller v. Interview, Inc.*, No. 07 Civ. 5728, 2009 WL 3241542, at *3-4 (S.D.N.Y. Sept. 30, 2009) (finding no waiver when review team staffed by attorneys with familiarity with privilege concerns spent over 250 hours reviewing documents).

**B. Inadvertently Produced Documents as Percentage of Total Production**

*Lois Sportswear* factor two -- the percentage of inadvertently produced documents as compared to the total volume of discovery -- also weighs strongly in favor of finding a waiver. Though the parties did not provide current numbers (in part because Artisan's privilege review was ongoing), Artisan's initial clawback was 2,595 pages of documents, i.e., nearly 9% of Artisan's total production. Since then, the parties report that Artisan has clawed back an additional 71 documents and reproduced 115. Courts have found that significantly smaller ratios than the initial clawback of 9% of the total production "strongly support[] waiver." *McDermott*, 2026 WL 2294812, at *4 (collecting cases in which percentages of 5% or less supported finding waiver).

**C. Time to Rectify Disclosure**

*Lois Sportswear* factor three -- the length of time taken by Artisan to rectify the disclosure -- also weighs in favor of finding a waiver. Once apprised of the inadvertent disclosure, the record is unclear whether Artisan immediately clawed back known privileged documents: Artisan states that it asked eko to treat such documents as inadvertently produced, and eko asserts that Artisan asked eko to treat the documents as "presumptively privileged." In any event, the parties agree that Artisan did not send "an initial list of documents" to be clawed back until nearly one month after eko alerted Artisan to the inadvertent disclosure. Artisan

continued to claw back additional documents at depositions and through at least mid-July -- over three months after eko initially raised the issue. The delay and protracted period of clawbacks here far exceed those that courts have found sufficiently prompt to weigh against a finding of waiver. *See United States v. Wells Fargo Bank, N.A.*, No. 12 Civ. 7527, 2015 WL 5051679, at *2 (S.D.N.Y. Aug. 26, 2015) (finding no waiver for clawback six weeks after party was apprised of inadvertent disclosure when party had begun rolling clawbacks within three days); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 75 (S.D.N.Y. 2009) (finding no waiver when party "promptly sought to recall" privileged documents once apprised of inadvertent disclosure and "initiated targeted searches to determine whether any other privileged documents had been inadvertently produced").

**D. Fairness Considerations**

Although Rule 502(b) does not explicitly incorporate any fairness inquiry, courts in this Circuit typically consider the fourth *Lois Sportswear* factor of fairness in determining whether a finding of waiver is warranted. *See, e.g.*, *Kaneka Corp.*, 801 F. Supp. 3d at 174-75; *United States v. Schulte*, No. 17 Crim. 548, 2022 WL 1284549, at *3 (S.D.N.Y. Apr. 29, 2022). Here, fairness considerations are, on balance, neutral. On the one hand, Artisan will likely be prejudiced by a finding of waiver. On the other, eko was prejudiced to the extent that it expended attorney-hours reviewing and analyzing documents over which Artisan belatedly claimed privilege. For instance, eko notes that Artisan clawed back documents at depositions, including after Artisan's witnesses had answered questions about the documents.

In explaining Artisan's review process, Artisan references "the demands of the schedule in this case, and the high volume of documents requiring review." The Court is sympathetic to

counsel's need to balance case deadlines with the discovery demands in this action, particularly for a solo practitioner. However, these considerations do not overcome that reasonable precautions were not taken to prevent disclosure. Nor was the inadvertent disclosure rectified promptly.

**E. Totality of Factors**

Under Rule 502(b) and in view of the *Lois Sportswear* factors, a finding of waiver is warranted. Under Rule 502(b)(2), Artisan's failure to take "reasonable steps to prevent disclosure" is sufficient to find waiver. This finding is warranted because Artisan's review lacked both meaningful safeguards on the front end to assist the Review Team and back-end quality control measures after the Review Team had completed its review. This finding is also warranted because the results of Artisan's review speak for themselves -- i.e., inadvertently producing almost all responsive privileged documents, and initially clawing back almost 9% of Artisan's total production. Although the Protective Order allows for clawbacks of inadvertently produced information, the Protective Order does not assist Artisan because Artisan was "completely reckless" and showed "no regard for preserving the confidentiality of the privileged documents." *Kaneka Corp.*, 801 F. Supp. 3d at 171.

A finding of waiver is warranted for the additional independent reason that under Rule 502(b)(3) Artisan did not "promptly t[ake] reasonable steps to rectify the error." Artisan took steps to rectify the error -- i.e., a comprehensive re-review for privilege conducted by a better-instructed Review Team and a personal review by Artisan's Counsel. These steps were certainly more reasonable than the steps Artisan took before the initial production, but they were not

"prompt." Artisan did not claw back any documents until nearly one month after being informed of the inadvertent production, and Artisan continued to claw back documents for months after.

## IV. CONCLUSION

For the reasons stated above, eko's motion is **GRANTED**. Artisan is deemed to have waived the attorney-client privilege over inadvertently produced documents in this matter. By **September 9, 2026**, Artisan shall re-produce all inadvertently produced documents.

Dated: September 2, 2026
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**